Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL IX

| | | |
|---|---|---|
| ROSA E. RUIZ VALLE<br><br>Recurrida<br><br><br>v.<br><br><br>EBENEZER AUTO, LLC.;<br>POPULAR AUTO, LLC.<br><br>Recurrente | TA2025RA00324 | *REVISIÓN ADMINISTRATIVA* procedente del Departamento de Asuntos del Consumidor<br><br>Querella número:<br>SAN-2024-0017885<br><br>Sobre:<br>Compra Venta de Vehículos de Motor |

Panel integrado por su presidenta, la juez Brignoni Mártir, el juez Salgado Schwarz y la juez Aldebol Mora.

Aldebol Mora, Juez Ponente

## SENTENCIA

En San Juan, Puerto Rico, a 27 de febrero de 2026.

Comparece la parte recurrente, Ebenezer Auto, LLC., y, mediante el recurso de epígrafe, nos solicita que revoquemos una *Resolución* emitida por el Departamento de Asuntos del Consumidor el 28 de agosto de 2025 y notificada al día siguiente. Mediante esta, la agencia recurrida declaró Ha Lugar la *Querella* de epígrafe y decretó la resolución del contrato de compraventa objeto de litigio,[1] así como ordenó la devolución de las prestaciones. En consecuencia, le ordenó a la parte recurrente reembolsarle a la recurrida, Rosa E. Ruiz Valle todas las mensualidades pagadas por concepto del financiamiento del vehículo, así como relevarle del remanente del préstamo otorgado entre esta y la codemandada, Popular Auto, LLC.

Por los fundamentos que se exponen a continuación, se modifica el dictamen administrativo recurrido, a los fines que se detallarán en la presente *Sentencia*. Así modificada, se confirma la *Resolución* recurrida.

---

[1] Este Foro pudo examinar el contrato de compraventa, ya que el documento forma parte del expediente administrativo.

**I**

El 4 de agosto de 2023, Rosa E. Ruiz Valle (Ruiz Valle o la recurrida) suscribió un contrato de compraventa con Ebenezer Auto, LLC. (Ebenezer o parte recurrente). En virtud de este, Ruiz Valle adquirió un vehículo de motor usado, marca Mitsubishi, del 2022, con un millaje de 13,800 millas. El financiamiento del vehículo de motor estuvo a cargo de Popular Auto, LLC., ahora Banco Popular de Puerto Rico (BPPR),[2] mediante un contrato de venta al por menor a plazos.

El 20 de diciembre de 2023, Ruiz Valle presentó la *Querella* de epígrafe en el Departamento de Asuntos del Consumidor (DACO), en contra de Gilberto Ortiz Villegas (Ortiz Villegas), en calidad de gerente de ventas de Ebenezer, y el BPPR, en calidad de cesionario, sobre incumplimiento de garantía. En la descripción de los hechos y remedio solicitado, la recurrida expresó que el vehículo tenía un ruido en la parte delantera del conductor, razón por la cual lo llevó al fabricante, donde le informaron que este no tenía garantía debido a que había sido chocado.

Ruiz Valle explicó en la *Querella* que, como resultado de lo anterior, llevó el vehículo a Ebenezer. Allí, cuestionó que no se le informara con antelación a la compra que el vehículo fuese "construido", por haber sido chocado con anterioridad a la compraventa. Como remedio, la recurrida solicitó el cambio de la unidad o la cancelación del contrato. El 7 de febrero de 2024, el DACO le notificó la presentación de la *Querella*, tanto a Ebenezer, como al BPPR.[3]

Luego de varias incidencias procesales a nivel administrativo, y con el propósito de adjudicar los méritos de la *Querella* de epígrafe,

---

[2] Surge del expediente que, en mayo de 2025, el Banco Popular de Puerto Rico (BPPR) solicitó sustitución de parte ante la agencia recurrida, debido a que, efectivo el 1 de mayo de 2025, Popular Auto, LLC., se fusionó con su compañía matriz, el BPPR. Véase, págs. 8-9 del apéndice del recurso.
[3] Véase págs. 24-32 del apéndice del recurso.

el 25 de agosto de 2025, el DACO llevó a cabo una vista administrativa. La referida vista contó con la comparecencia de Ruiz Valle y de Ebenezer, ambos representados por abogado, mientras que el BPPR no compareció, ni se excusó. Ortiz Villegas también compareció.

Durante la vista, la prueba testifical consistió en el testimonio de Ruiz Valle, por la parte querellante, mientras que, por la parte querellada, declaró Ortiz Villegas. Como prueba documental estipulada, se presentó el contrato de compraventa del vehículo suscrito entre Ruiz Valle y Ebenezer. Asimismo, se presentó el Informe de Inspección preparado por el Técnico de Investigación del DACO que realizó una inspección al vehículo el 12 de agosto de 2024.[4] Dicho documento fue admitido como prueba y consta en el expediente administrativo, debido a que ninguna de las partes lo impugnó oportunamente.

Luego de dirimir la prueba presentada por las partes durante la vista, así como en consideración a los documentos que obran en el expediente administrativo, el 28 de agosto de 2025, el DACO emitió la *Resolución* recurrida.[5] El referido dictamen fue notificado el 29 de agosto de 2025, aunque surge del expediente que el depósito en el correo fue el 2 de septiembre de 2025.[6] En virtud del dictamen recurrido, el DACO emitió las siguientes determinaciones de hechos:

1) La parte querellante le solicitó ayuda a su hija para la compra de un vehículo.

2) Los trámites de la compraventa fueron hechos por la hija de la querellante a través de llamadas telefónicas.

3) El 4 de agosto de 2023, en horas de la noche, el vendedor de la parte querellada llevó el vehículo al apartamento de la querellante. Allí la querellante firmó los documentos de compraventa y financiamiento y la parte querellada le hizo entrega del vehículo a la querellante.

4) La parte querellante adquirió un vehículo usado marca Mitsubishi, modelo Mirage G4 del año 2022.

---

[4] Véase págs. 40-42 del apéndice del recurso.
[5] Véase págs. 1-6 del apéndice del recurso.
[6] Véase pág. 7 del apéndice del recurso.

5) La querellante financió la unidad mediante un contrato de venta al por menor a plazos con Popular Auto, LLC. [Ahora Banco Popular de Puerto Rico].

6) Al mes y medio de adquirido, el vehículo mostró luces en el panel de instrumentación prendidas relacionadas a los neumáticos.

7) La hija de la parte querellante le reclamó a la parte querellada. Estos a su vez le instruyeron que llevara el vehículo al dealer querellado para su evaluación.

8) La parte querellada a su vez llevó el vehículo a Caribbean Auto y se le arregló la caja de bolas.

9) Posteriormente, al cabo de aproximadamente dos meses, la parte querellante percibió un zumbido en el lado izquierdo.

10) Sin embargo, la parte querellada no contestaba las reclamaciones realizadas por la hija de la querellante debido al tono amenazante proferido por ésta ya que ella no era la titular de la unidad.

11) El 20 de diciembre de 2023, la parte querellante presentó la reclamación ante este Departamento. Mediante la misma solicitó, en síntesis, la resolución del contrato de compraventa.

12) El 12 de agosto de 2024, se llevó a cabo una inspección por un Inspector de este Departamento.

13) Al momento de la inspección el vehículo había recorrido un total de 19,659 y luego de la prueba de carretera realizada el vehículo mostraba un total de 19,702 millas recorridas.

14) Según se desprende de dicho informe, los hallazgos de la inspección fueron los siguientes:

*El vehículo estaba en poder del querellado. Solicit[é] hacer una prueba de carretera donde recorrimos vías rurales con curvas y pendientes. Mostr[ó] un fuerte zumbido que recorría todo el monocasco del vehículo en la cual me aparent[ó] ser asunto de buje averiado.*

15) Además, se realizó una evaluación "O.B.D.II On Board Diagnostic" que arrojó varios códigos guardados y los códigos de la batería de la llave activos.

16) El informe no fue impugnado por ninguna de las partes.

17) El 13 de agosto de 2024, la querellante llevó el auto al dealer querellado para corregir el problema del zumbido. En esta ocasión el auto estuvo alrededor de una semana en poder del querellado y se le cambiaron las botellas.

18) Sin embargo, al momento de la vista administrativa el ruido del vehículo persistía.[7]

---

[7] Véase págs. 1-2 del apéndice del recurso.

En consideración a las determinaciones de hechos formuladas, el DACO concluyó que Ebenezer "no pudo o no quiso corregir el defecto", por lo que concluyó que procede la resolución del contrato.[8] Lo anterior, de conformidad con la Regla 29.3 del Reglamento Núm. 7159 de 6 de junio de 2006, conocido como *Reglamento de Garantías de Vehículos de Motor*.

Como remedio, la agencia recurrida declaró Ha Lugar la *Querella* de epígrafe y decretó la resolución del contrato de compraventa, así como ordenó la devolución de las prestaciones.[9] Asimismo, le concedió a Ebenezer un término de veinte (20) días, contados desde la fecha de notificación del dictamen recurrido, para reembolsarle a Ruiz Valle todas las mensualidades pagadas por concepto del financiamiento del vehículo objeto de la *Querella* de epígrafe. Además, le ordenó a Ebenezer relevar a la recurrida del remanente del préstamo otorgado por el BPPR. Por último, dispuso que "[u]na vez cumplido esto, la parte querellada coordinará una fecha con la parte querellante, para que la primera recoja el vehículo".[10]

En desacuerdo, el 22 de septiembre de 2025, el BPPR solicitó oportunamente la reconsideración del dictamen, así como que se le relevase de la *Resolución* recurrida.[11] Sin embargo, transcurridos quince (15) días, el DACO omitió actuar para acoger o rechazar la reconsideración, por lo que el 8 de octubre de 2025 comenzó a decursar el término para recurrir ante este Foro.

Así las cosas, por encontrarse todavía inconforme con el dictamen recurrido, el 31 de octubre de 2025, Ebenezer acudió ante este Foro mediante el recurso de epígrafe y señaló los siguientes errores:

---

[8] Véase pág. 4 del apéndice del recurso.
[9] Véase pág. 4 del apéndice del recurso.
[10] Véase pág. 5 del apéndice del recurso.
[11] Véase *Moción de Reconsideración y/o Relevo de Resolución*, págs. 10-23 del apéndice del recurso.

Erró el Departamento de Asuntos del Consumidor, como cuestión de derecho al emitir una *Resolución* decretando la resolución de un contrato de compraventa sin estar presente una parte indispensable, cesionaria del contrato de venta al por menor a plazos cuyos derechos quedan afectados por dicha *Resolución*.

Erró el Departamento de Asuntos del Consumidor como cuestión de derecho, al emitir una *Resolución* incompleta, que no resuelve los derechos de todas las partes y, ordenando a Ebenezer a pagar partidas que, conforme la jurisprudencia, le corresponden a la querellada, Banco Popular de P.R.

Erró el Departamento de Asuntos del Consumidor, como cuestión de derecho, en su apreciación de lo que constituye una oportunidad razonable para reparar el vehículo de la querellante.

A la par con la presentación del recurso de epígrafe, y debido a que cuestionó la apreciación de la prueba, Ebenezer nos solicitó autorización para presentar una Transcripción de la Prueba Oral (TPO). Así las cosas, en virtud de una *Resolución* que emitimos y notificamos el 5 de noviembre de 2025, le concedimos treinta (30) días a la parte recurrente, para presentar la TPO. Finalmente, luego de solicitar una prórroga, que concedimos, el 5 de diciembre de 2025, Ebenezer presentó la TPO.

De otra parte, el 6 de noviembre de 2025, el BPPR presentó un escrito, mediante el cual solicitó unirse al recurso de epígrafe como parte co recurrente. Tras considerar dicha petición, la autorizamos, mediante una *Resolución* que emitimos el 10 de noviembre de 2025.

Por su parte, y en cumplimiento con nuestra *Resolución* del 5 de noviembre de 2025, el 10 de diciembre de 2025, el DACO presentó una *Moción en Cumplimiento de Orden*. A esta, la agencia recurrida le adjuntó copia certificada del expediente administrativo.

Por último, luego de solicitar y que le concediéramos una prórroga para presentar su alegato suplementario, el 22 de enero de 2026, Ebenezer presentó una *Moción sometiendo escrito argumentando la prueba oral*. En cuanto a Ruiz Valle, esta no

compareció a objetar o estipular la TPO, por lo que la acogimos, mediante nuestra *Resolución* de 14 de enero de 2026.

Finalmente, el 23 de febrero de 2026, Ruiz Valle presentó un *Alegato en Oposición a Recurso de Revisión Judicial.* Esencialmente, manifestó no oponerse a que este Foro modifique la orden recurrida a los efectos de adjudicar al BPPR la responsabilidad de devolverle las mensualidades pagadas por concepto del financiamiento del vehículo. Al respecto, subrayó que el DACO no estaba impedido de atender la vista en su fondo sin la presencia del BPPR, ya que la institución bancaria fue debidamente acumulada en el pleito administrativo. Asimismo, destacó que, durante la vista del 5 de junio de 2025, el BPPR fue citado a la vista del 25 de agosto de 2025.

Con el beneficio de evaluar la TPO, los escritos de las partes y el expediente administrativo, procedemos a adjudicar el recurso.

**II**

**A**

Sabido es que los tribunales apelativos debemos otorgar amplia deferencia a las decisiones emitidas por las agencias administrativas, puesto que cuentan con vasta experiencia y pericia para atender aquellos asuntos que la Asamblea Legislativa les ha delegado. *Otero Rivera v. USAA Fed. Savs. Bank*, 214 DPR 473, 484 (2024); *Hernández Feliciano v. Mun. Quebradillas*, 211 DPR 99, 114 (2023); *OEG v. Martínez Giraud*, 210 DPR 79, 116-117 (2022). Es por ello, que tales determinaciones gozan de una presunción de legalidad y corrección que a los tribunales nos corresponde respetar, mientras la parte que las impugne no presente prueba suficiente para derrotarlas. *Transp. Sonnell, v. Jta. Subastas ACT*, 214 DPR 633, 648 (2024); *Otero Rivera v. USAA Fed. Savs. Bank*, supra, pág. 484; *Batista, Nobbe v. Jta. Directores*, 185 DPR 206, 215-216 (2012).

No obstante, la norma antes reseñada tampoco es absoluta. Al respecto, el Tribunal Supremo ha enfatizado que no podemos

imprimirle un sello de corrección, so pretexto de deferencia, a las determinaciones administrativas que sean irrazonables, ilegales o contrarias a derecho. *Voilí Voilá Corp. et al. v. Mun. Guaynabo*, 213 DPR 743, 754 (2024).

En *Torres Rivera v. Policía de PR*, 196 DPR 606, 628 (2016), nuestro Tribunal Supremo resumió las normas básicas en torno al alcance de la revisión judicial. Sobre el particular, detalló lo siguiente:

> [L]os tribunales deben deferencia a las decisiones de una agencia administrativa, pero ésta cederá cuando: (1) la determinación administrativa no está basada en evidencia sustancial; (2) el ente administrativo erró en la aplicación o interpretación de las leyes o los reglamentos que se le ha encomendado administrar; (3) el organismo administrativo actuó arbitraria, irrazonable o ilegalmente, realizando determinaciones carentes de una base racional, o (4) la actuación administrativa lesionó derechos constitucionales fundamentales. [Cita omitida] Es importante destacar que si el tribunal no se encuentra frente a alguna de esas situaciones, aunque exista más de una interpretación razonable de los hechos, procede que se valide la interpretación que realizó la agencia administrativa recurrida.

El criterio rector bajo el cual los tribunales deben revisar las decisiones administrativas es el criterio de razonabilidad. *OEG v. Martínez Giraud*, supra, pág. 89; *Super Asphalt v. AFI y otro*, 206 DPR 803, 820 (2021); *Graciani Rodríguez v. Garage Isla Verde*, 202 DPR 117, 127 (2019); *Torres Rivera v. Policía de PR*, supra, pág. 626. Bajo este criterio, la revisión judicial se limita a dirimir si la agencia actuó de forma arbitraria o ilegal, o de manera tan irrazonable que su actuación constituya un abuso de discreción. *OEG v. Martínez Giraud*, supra.

Bajo este supuesto, la sección 4.5 de la *Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico*, Ley Núm. 38-2017, 3 LPRA sec. 9675 (LPAU), estableció "el marco rector aplicable a la revisión judicial de las determinaciones de las agencias administrativas". *Otero Rivera v. USAA Fed. Savs. Bank*, supra, pág. 484; *Rolón Martínez v. Supte. Policía*, 201 DPR 26, 35 (2018). De este

modo, la intervención del tribunal se limita a tres áreas, a saber: (1) si el remedio concedido por la agencia fue apropiado; (2) si las determinaciones de hechos que la agencia realizó están sostenidas por la evidencia sustancial que obra en el expediente administrativo, visto en su totalidad, y (3) si las conclusiones de derecho del ente administrativo fueron correctas. *Katiria's Café, Inc. v. Municipio Autónomo de San Juan*, res. el 27 de marzo de 2025, 2025 TSPR 33, citando a *Pagán Santiago et al. v. ASR*, 185 DPR 341, 358 (2012); *Rolón Martínez v. Supte. Policía,* supra, págs. 35-36.

Por otro lado, las conclusiones de derecho pueden ser revisadas en su totalidad. Sec. 4.5 de la LPAU, 3 LPRA sec. 9675; *Rolón Martínez v. Supte. Policía*, supra, pág. 36; *Torres Rivera v. Policía de PR*, supra, pág. 627. No obstante, los tribunales deberán dar peso y deferencia a las interpretaciones que la agencia realice respecto a aquellas leyes y reglamentos que administra. *Rolón Martínez v. Supte. Policía*, supra.

En fin, el Tribunal Supremo ha dispuesto que la deferencia que le deben los tribunales a la interpretación que haga el ente administrativo sobre aquellas leyes y reglamentos que le corresponde poner en vigor, cede si la agencia: "(1) erró al aplicar la ley; (2) actuó arbitraria, irrazonable o ilegalmente, o (3) lesionó derechos constitucionales fundamentales". *Torres Rivera v. Policía de PR*, supra, págs. 627-628; *OEG v. Martínez Giraud*, supra, pág. 90.

De este modo, el Alto Foro ha expresado que el criterio administrativo no podrá prevalecer en aquellas instancias en que la interpretación estatutaria realizada por una agencia provoque un resultado incompatible o contrario al propósito para el cual fue aprobada la legislación y la política pública que promueve. Así, considera que "la deferencia judicial al *expertise* administrativo, concedido cuando las agencias interpretan la ley, tiene que ceder

ante actuaciones que resulten irrazonables, ilegales o que conduzcan a la comisión de una injusticia". *OEG v. Martínez Giraud*, supra, pág. 91.

**B**

El DACO es una agencia administrativa creada de conformidad con la Ley Núm. 5 del 23 de abril de 1973, según enmendada, 3 LPRA sec. 341 *et seq.*, conocida como *Ley Orgánica del Departamento de Asuntos del Consumidor*. Su propósito principal es implementar y hacer valer los derechos de los consumidores en nuestra jurisdicción. Véase, *Ayala Hernández v. Consejo de Titulares*, 190 DPR 547, 563 (2014); *Suárez Figueroa v. Sabanera Real, Inc.*, 173 DPR 694, 704 (2008).

Así, surge de su ley habilitadora que el DACO fue creado con el objetivo de vindicar, proteger e implementar los derechos que le asisten al consumidor. Artículo 3 de la Ley Núm. 5, 3 LPRA sec. 341b; *D.A.Co. v. Fcia. San Martín*, 175 DPR 198, 204 (2009). Entre las facultades que ostenta el Secretario del DACO, en virtud de la Ley Núm. 5, *supra*, se encuentran "atender, investigar y resolver las querellas presentadas por los consumidores de bienes y servicios adquiridos o recibidos del sector privado de la economía, y de conceder los remedios pertinentes conforme a derecho". Artículo 6(c) de la Ley Núm. 5, 3 LPRA sec. 341e(c).

De este modo, también de conformidad con sus facultades al amparo de la Ley Núm. 5, *supra*, y en virtud de la Ley Núm. 7 de 24 de septiembre de 1979, según enmendada, 10 LPRA sec. 2051 *et seq.*, el DACO aprobó el Reglamento Núm. 7159 de 6 de junio de 2006, conocido como *Reglamento de Garantías de Vehículos de Motor*.[12] Según la Regla 2, entre los objetivos del Reglamento Núm. 7159 se encuentran ofrecer a los consumidores protección adecuada

---

[12] Según enmendado por el Reglamento Núm. 7920 de 3 de octubre de 2010, el cual únicamente enmendó las Reglas 5, 16, 19 y 21.

para proteger la inversión que realizan al adquirir un vehículo de motor, así como prevenir prácticas ilícitas en la venta de estos vehículos. Así, sus reglas son aplicables a toda persona natural o jurídica que se dedique a la venta o servicio de vehículos de motor nuevos o usados y sus disposiciones deben interpretarse liberalmente a favor de los consumidores. Véase, Reglas 3 y 4 del Reglamento Núm. 7159; *Polanco v. Cacique Motors*, 165 DPR 156, 164 (2005).

La Regla 26 del Reglamento Núm. 7159, aplicable específicamente a la venta de vehículos de motor usados, prohíbe expresamente vender un vehículo usado sin garantía. Regla 26.1, Reglamento Núm. 7159. En lo pertinente, dispone que el vendedor está obligado a conceder garantía, en piezas y mano de obra, a base del millaje recorrido por el vehículo y de conformidad con la escala que se detalla a continuación:

a) **Hasta 36,000 millas – cuatro (4) meses o cuatro mil (4,000) millas, lo que ocurra primero**.

b) Más de 36,000 millas y hasta 50,000 millas – tres (3) meses o tres mil (3,000) millas, lo que ocurra primero.

c) Más de 50,000 millas y hasta 100,000 millas – dos (2) meses o dos (2,000) millas, lo que ocurra primero.

Regla 26.2, Reglamento Núm. 7159. (Negrillas suplidas).

Por último, la Regla 29 del Reglamento Núm. 7159 es la disposición en la que se codifican las "obligaciones del vendedor al proveer servicio de reparación en garantía a un vehículo usado". En lo pertinente, la Regla 29 establece lo siguiente:

> OPORTUNIDAD RAZONABLE PARA REPARAR DEFECTOS – El Departamento, podrá a opción del consumidor, decretar la resolución del contrato o reducir proporcionalmente su precio de venta de acuerdo a las disposiciones del Código Civil de Puerto Rico en aquellos casos en que el vendedor o su representante, dentro de los términos de la garantía, tuvo oportunidad razonable para reparar uno o más defectos, pero no quiso o no pudo corregirlos. Lo que constituye oportunidad razonable de reparar se determinará tomando en consideración las circunstancias particulares de cada caso.

Regla 29.3, Reglamento Núm. 7159.

**III**

Mediante el primer señalamiento de error esbozado, la parte recurrente plantea que el DACO incidió, como cuestión de derecho, al emitir una *Resolución* en virtud de la cual decretó la resolución de un contrato de compraventa, sin estar presente una parte indispensable. Entiéndase, el BPPR, que es el cesionario del contrato de venta al por menor a plazos, cuyos derechos, según afirma Ebenezer, quedan afectados por dicha *Resolución*. Este error no se cometió.

Como resaltáramos, el 6 de noviembre de 2025, el BPPR nos solicitó unirse al recurso de epígrafe instado por Ebenezer, como parte co recurrente, lo cual autorizamos. En síntesis, el BPPR suscribió el primer señalamiento de error formulado por Ebenezer. Ello, debido a que, mediante este, la parte recurrente cuestiona la presunta falta de notificación al BPPR sobre el señalamiento de vista administrativa pautado para el 25 de agosto de 2025.

En síntesis, en su argumentación del primer error, Ebenezer adujo que la jueza administrativa que presidió la vista procedió a realizarla sin mencionar la incomparecencia del BPPR. Asimismo, que esta agravó la situación al ordenar la resolución del contrato de compraventa y la devolución de las prestaciones, sin la presencia del BPPR, quien es parte indispensable, en calidad de cesionario del referido contrato. No les asiste la razón a Ebenezer y al BPPR.

En primer lugar, de un examen de la TPO surge que, al comenzar la vista administrativa celebrada el 25 de agosto de 2025, la jueza administrativa expresó que el BPPR había quedado debidamente citado durante un señalamiento previo.[13] Asimismo, que, en aquella ocasión, le había ordenado al BPPR que presentara una moción en la que argumentase el planteamiento de parte

---

[13] Véase TPO, pág. 2. Entrada núm. 10 del caso núm. TA2025RA00324 en el SUMAC TA.

indispensable.[14] Del mismo modo, la jueza administrativa repasó que, en la vista previa, les había ordenado a todas las partes -incluido el BPPR- que intercambiaran a sus respectivas direcciones de récord, la prueba documental que utilizarían para sustentar las alegaciones.

Así las cosas, luego de evaluar la TPO y la totalidad de la copia certificada del expediente administrativo, estamos en posición de validar las expresiones realizadas por la jueza administrativa durante la vista. En primer lugar, surge de dicho expediente que Ruiz Valle incluyó oportunamente a Popular Auto, LLC., ahora BPPR, como parte co querellada. Asimismo, surge que, el 7 de febrero de 2024, el DACO le notificó la *Querella*, tanto a Ebenezer, como al BPPR. Surge también que, con posterioridad a la notificación de la *Querella*, Popular Auto, LLC., compareció a solicitar la desestimación sumaria de la causa instada en su contra[15] e, incluso, el BPPR compareció posteriormente a solicitar la sustitución de parte.

Asimismo, el expediente administrativo contiene una *Minuta y Orden* de la cual surge que, el 9 de junio de 2025, Ruiz Valle, Ebenezer y el BPPR comparecieron a un señalamiento pautado mediante el mecanismo de videoconferencia. Surge de la mencionada *Minuta y Orden* que, en esa ocasión, la jueza administrativa les ordenó a las partes intercambiar la prueba documental que interesaran presentar durante la vista en los méritos, la cual calendarizó para el 25 de agosto de 2025.

Como consecuencia de lo anterior, es forzoso concluir que el BPPR no solo fue notificado de la presentación de la *Querella*, sino que litigó activamente en el foro administrativo. También nos parece

---

[14] Véase TPO, pág. 2. Entrada núm. 10 del caso núm. TA2025RA00324 en el SUMAC TA.
[15] Véase págs. 35-38 del apéndice del recurso.

evidente que, desde el 9 de junio de 2025, el BPPR quedó debidamente citado a la vista del 25 de agosto de 2025. Por tanto, no existe controversia respecto a que el DACO en todo momento tuvo jurisdicción sobre el BPPR. No se cometió el primer error señalado.

En virtud del segundo señalamiento de error, la parte recurrente expuso que el DACO erró, como cuestión de derecho, al emitir una *Resolución* incompleta. Ello, en la medida que, según argumentó, el dictamen recurrido no resuelve los derechos de todas las partes. Es la postura de Ebenezer que el DACO le ordenó satisfacer el pago de unas partidas que, conforme a la jurisprudencia, le corresponden al BPPR. Tiene razón.

En la *Resolución* recurrida, el DACO incluyó la orden siguiente:

> Se declara ha lugar la querella de epígrafe. Se decreta la resolución del contrato de compraventa y la devolución de las prestaciones.
>
> **Se le ordena a la parte querellada, Ebenezer Auto, Inc.**, que dentro del término de veinte (20) días contados desde la fecha de notificación de la presente Resolución, **le reembolse a la parte querellante, Rosa E. Ruiz Valle, todas las mensualidades pagadas por concepto de financiamiento del vehículo objeto de la presente querella. Además, Ebenezer Auto, Inc., relevará a la parte querellante, del remanente del préstamo otorgado por Popular Auto, LLC**.
>
> Una vez cumplido esto, la parte querellada coordinará una fecha con la parte querellante, para que la primera recoja el vehículo.[16] (Negrillas suplidas).

Para la discusión del segundo error, enfocado en la corrección de la obligación de pago de las partidas que el DACO le adjudicó a Ebenezer en la citada orden, es necesario aludir a lo resuelto por el Tribunal Supremo en *Otero Rivera v. USAA Fed. Savs. Bank*, 214 DPR 473 (2024). Mediante opinión mayoritaria, el Alto Foro resolvió esencialmente que, en casos como el de epígrafe, "la imposición de solidaridad a la entidad financiera no procede en derecho". *Íd.*, pág. 479. En lo pertinente, detalló que, "bajo el precepto de que la

---

[16] *Resolución* recurrida, págs. 4-5; págs. 1-6 del apéndice del recurso.

solidaridad no se presume en nuestro ordenamiento jurídico", en la relación contractual *sui géneris* que surge entre la parte vendedora de un vehículo de motor y la institución bancaria que le provee el financiamiento al comprador en calidad de *cesionaria*, "opera la presunción de mancomunidad en cuanto a la obligación de responder por la devolución de las prestaciones". *Íd.*, pág. 496.

Así, el Tribunal Supremo dispuso que, en casos como el de epígrafe, "cada parte deberá devolver lo que le corresponda". *Íd.* En específico, detalló que la forma correcta de adjudicar estas partidas en función de lo que "le corresponde" a cada parte, es la siguiente:

> (1) El **vendedor del vehículo de motor deberá** devolverle al consumidor cualquier dinero por concepto de depósito o "trade in", si alguno, y **devolverle a la entidad financiera el dinero recibido del préstamo**; (2) **la entidad financiera deberá devolverle al consumidor los pagos mensuales efectuados por el financiamiento** del vehículo de motor, y (3) el consumidor deberá devolverle al vendedor vehículo de motor.

*Íd.* (Negrillas suplidas).

En consideración a lo anterior, es forzoso concluir que procede modificar la orden emitida por el DACO en la *Resolución* recurrida. Ello, en la medida que, sin realizar mención alguna de la responsabilidad que le corresponde asumir al BPPR de conformidad con la jurisprudencia citada, le adjudicó erróneamente a Ebenezer toda la responsabilidad, tras declarar Ha Lugar la *Querella*. Subrayamos que, de conformidad con el análisis que realizamos como parte de la discusión del primer señalamiento de error, *nada le impedía al DACO adjudicarle al BPPR la parte de la responsabilidad que le corresponde a pesar de su incomparecencia a la vista administrativa, puesto que poseía jurisdicción sobre su persona.*

En síntesis, de forma cónsona con lo dispuesto por el Tribunal Supremo en *Otero Rivera v. USAA Fed. Savs. Bank*, supra, a Ebenezer le corresponde *únicamente* devolverle al BPPR el dinero

recibido del préstamo que fue otorgado a Ruiz Valle. Por su parte, el BPPR es responsable de devolverle a la recurrida los pagos mensuales que esta llegó a efectuar como resultado del financiamiento que le otorgó.

De este modo, y toda vez que las conclusiones de derecho que realiza una agencia administrativa en un dictamen final son revisables por este Foro en toda su extensión,[17] nos corresponde modificar el segundo párrafo de la orden emitida por el DACO. Así las cosas, este debe disponer como sigue:

> Se le ordena a la parte querellada, *Popular Auto, LLC., ahora Banco Popular de Puerto Rico,* que dentro del término de veinte (20) días contados desde la fecha de notificación de la presente Resolución, le reembolse a la parte querellante, Rosa E. Ruiz Valle, todas las mensualidades pagadas por concepto de financiamiento del vehículo objeto de la presente querella. Además, Ebenezer Auto, Inc., relevará a la parte querellante, del remanente del préstamo otorgado por Popular Auto, LLC., *mediante el pago al Banco Popular de Puerto Rico de la totalidad del monto que recibió del préstamo otorgado a la querellante, al momento de la compraventa.*[18]

Por último, en virtud del tercer señalamiento de error esbozado, Ebenezer adujo que el DACO erró, como cuestión de derecho, en su apreciación de lo que constituye una oportunidad razonable para reparar el vehículo de la recurrida. Este error no se cometió.

Sobre este particular, en la *Resolución* recurrida y tras aquilatar la prueba testifical que desfiló durante la vista administrativa, el DACO concluyó que "la actuación obstinada de la parte querellada [Ebenezer] demuestra que no pudo o no quiso corregir el defecto [del vehículo]".[19] En su interpretación de la prueba evaluada, el DACO razonó que la recurrida le reclamó a Ebenezer en varias ocasiones que respondiera por varios

---

[17] Véase Sec. 4.5 de la LPAU, 3 LPRA sec. 9675.
[18] Se colocó en bastardillas el texto modificado o añadido por este Foro.
[19] *Resolución* recurrida, pág. 4; págs. 1-6 del apéndice del recurso.

desperfectos que el vehículo comenzó a mostrar a partir del mes y medio de la compraventa.[20]

Asimismo, consideró probado que, a los dos meses de la compraventa, Ruiz Valle le reclamó a Ebenezer, a través de su hija, que percibía un zumbido en el lado izquierdo del vehículo, y que no recibió respuesta, debido a que los acercamientos no los realizó la titular.[21] Lo anterior, a pesar de que la totalidad del proceso de negociación conducente al perfeccionamiento de la compraventa se llevó a cabo a través de la misma hija de la recurrida a la que se hace referencia, sin que ello representara algún impedimento. Todo lo manifestado en este párrafo encuentra apoyo en el testimonio de Ortiz Villegas, quien, al testificar durante la vista, reconoció que dejó de contestar las llamadas en cuestión, ya que le pareció que lo llamaba con "acusaciones".[22]

En cuanto al zumbido perceptible en el lado izquierdo del vehículo, nótese, además, que el DACO, no solo dio credibilidad al testimonio de Ruiz Valle, quien dio detalles al respecto durante la vista.[23] Adicional, la agencia recurrida consideró lo expresado por el Técnico de Investigación del DACO en el Informe de Inspección que realizó al vehículo, mientras este estuvo en poder de Ebenezer. Dicho informe figura como prueba documental, ya que ninguna de las partes lo impugnó. Como cuestión de hecho, pudimos constatar que, en el renglón "resultados de la inspección" del informe, el Técnico de Investigación consignó que, luego de recorrer vías rurales con curvas y pendientes, el vehículo "[m]ostr[ó] un fuerte zumbido que recorría todo el monocasco del vehículo, en el cual me aparent[ó] ser un buje averiado".[24]

---

[20] *Resolución* recurrida, pág. 4; págs. 1-6 del apéndice del recurso.

[21] *Resolución* recurrida, pág. 4; págs. 1-6 del apéndice del recurso.

[22] Véase TPO, págs. 66-67. Entrada núm. 10 del caso núm. TA2025RA00324 en el SUMAC TA.

[23] Véase TPO, pág. 28. Entrada núm. 10 del caso núm. TA2025RA00324 en el SUMAC TA.

[24] Véase *Informe de Inspección*, pág. 41 del apéndice del recurso.

Por último, cabe destacar que el DACO también determinó como hecho probado que, "al momento de la vista administrativa el ruido del vehículo persistía".[25] Luego de estudiar la TPO, estamos en posición de validar que la referida determinación encuentra apoyo en la prueba testifical evaluada por la jueza administrativa, pues, durante su testimonio, la recurrida afirmó que "el vehículo sigue igual, con el mismo ruido".[26] En fin, consideramos que la credibilidad que la jueza administrativa le adjudicó al testimonio de Ruiz Valle merece toda nuestra deferencia, en ausencia de prejuicio o parcialidad.

En consideración a lo anterior, no estamos en posición de intervenir para cuestionar la apreciación de la prueba por parte de la jueza administrativa. En ese sentido, es preciso no perder de perspectiva que el foro administrativo basó su conclusión de que Ebenezer tuvo oportunidad razonable para reparar el vehículo[27] y no lo hizo, tanto en su apreciación de la prueba, como en la totalidad del expediente administrativo. En conclusión, no se cometió el tercer error señalado.

**IV**

Por los fundamentos que anteceden, se modifica el dictamen administrativo recurrido, a los fines detallados en la presente *Sentencia.* Así modificada, se confirma la *Resolución* recurrida.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones

---

[25] *Resolución* recurrida, pág. 2; págs. 1-6 del apéndice del recurso.
[26] Véase TPO, pág. 38. Entrada núm. 10 del caso núm. TA2025RA00324 en el SUMAC TA.
[27] De conformidad con el estándar establecido en la Regla 29.3 del Reglamento Núm. 7159, sobre "Oportunidad razonable para reparar defectos".